# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:12-cv-02638-CMA-KMT

**STEPHANIE SPEIGHT**, individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

**BANKRATE, INC**., a Delaware corporation,

    Defendant.

## DECLARATION OF ATTORNEY STEVEN WOODROW
## IN SUPPORT OF PLAINTIFF SPEIGHT'S SECOND MOTION TO COMPEL

I, Steven Woodrow, on oath declare as follows:

1.     I am a partner with the law firm of Edelson LLC. I am one of Ms. Speight's attorneys in the above-captioned matter.

2.     This case challenges Bankrate's making of telephone calls to consumers without first obtaining consent to be called.

3.     On August 6, 2013, I sent an email to Bankrate's counsel wherein Plaintiff Speight asked Bankrate to produce the following, among other items:

> 6. All database schema and fields that Bankrate maintains for the leads it purchased from Inadco. Please indicate whether such schema included populated fields for "Subsource ID" or "Referring URL" or similar field, and
>
> 7. A report generated by querying Bankrate's database(s) that contains its Inadco lead data for all Inadco leads where the "Subsource ID" or

>"Referring URL" or similar field is populated with www.branddealsonline.com. Include in the report the number of leads Bankrate purchased from Inadco that originated via www.branddealsonline.com.

A true and accurate copy of the Email of August 6, 2013 is attached hereto as Exhibit 1.

    4.    After receiving this email, on August 16, 2013, counsel for the Parties held a telephonic meet and confer.

    5.    During the August 16, 2013 meet and confer, Bankrate's counsel indicated that Bankrate does not have data regarding the source URL for leads that came from Inadco. According to Bankrate's counsel, the source URL (such as, in this case, branddealsonline.com) is not a data point that is maintained and all that can be determined is which leads came from Inadco. Bankrate's counsel further indicated that the Inadco leads could have come from various other URLs besides the Branddeals Website. During a separate meet and confer, Inadco's counsel likewise indicated that Inadco was selling insurance leads to Bankrate that had been obtained—through United Quotes—from the Branddeals website, along with other URLs and source.

    6.    In response to Bankrate counsel's statements regarding their inability to identify leads by source URL, I informed Bankrate's counsel that Plaintiff would still need to understand the database fields and schema for the Five9 database information that Bankrate did maintain. This request was consistent with the first part of Question 6, wherein Plaintiff asked Bankrate to produce "[a]ll database schema and fields that Bankrate maintains for the leads it purchased from Inadco." Bankrate's counsel refused

2

to produce the information, claiming that such information was irrelevant and had not been previously requested by Plaintiff.

7. In response, I explained that the database schema and fields information is directly relevant to ascertainability, numerosity, and manageability. I further explained that if Bankrate is able to provide data showing the telephone numbers called where the lead was obtained from Inadco, such information could be compared with lead data to-be produced by either SubscriberBASE or United Quotes showing the leads that originated from the Branddeals Website and were sold to United Quotes. By cross-referencing the data provided by both Bankrate and SubscriberBASE/United Quotes, Plaintiff could determine leads identified by Bankrate had originated from the Branddeals Website. Once these numbers were reviewed for cellphones, the final list would be telephone numbers of persons who fell into the Class definition.

8. Bankrate's counsel wouldn't confirm whether such data could be provided by Bankrate. He further responded "that's not how it works" because the leads could have also been purchased or acquired by Bankrate and called through other channels. This statement by Bankrate's counsel is not accurate. First, both Bankrate and its lead generators uses filters and other scrubbing practices to ensure that they do not purchase duplicate leads. Moreover, time data (i.e. database fields showing the time and/or date when a lead was both acquired and called) could be generated in conjunction with the Bankrate data to show a temporal connection between the lead obtained via the Branddeals Website and Bankrate's calling of the consumer.

9.      On August 16, 2013, after the meet and confer, I sent a follow up email to Bankrate's counsel reminding them about Document Requests Nos. 17 and 18. Specifically, Document Request 17 asked for:

> All DOCUMENTS RELATING TO how the PHONE CALLS to PLAINTIFF and the PROPOSED BANKRATE CLASS MEMBERS were made, INCLUDING, DOCUMENTS DESCRIBING or IDENTIFYING all TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS, and how the phone numbers of the PLAINTIFF and the PROPOSED BANKRATE CLASS MEMBERS were inputted, processed, stored, and dialed.

A true and accurate copy of the Email of August 16, 2013 is attached hereto as Exhibit 2. The plain language of this request confirms that Plaintiff had previously requested the type of lead data sought by Plaintiff during the meet and confer.

Further affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executing in Denver, Colorado, on August 19, 2013.

/s/ Steven L. Woodrow
Steven L. Woodrow

# Exhibit 1



**Megan Lindsey <mlindsey@edelson.com>**

## Speight v. Bankrate

**Steve Woodrow** <swoodrow@edelson.com>                                           Tue, Aug 6, 2013 at 12:04 PM
To: "Merryman, Bryan" <bmerryman@whitecase.com>, "Hawk, J. Jonathan" <jhawk@whitecase.com>, Megan Lindsey <mlindsey@edelson.com>, Patrick Peluso <ppeluso@edelson.com>

Bryan:

As we discussed following a couple of the depositions, Plaintiffs need certain outstanding documents and related information from Bankrate. Please advise as to whether Bankrate will produce the information. For any items where Bankrate opposes disclosing the information requested, please let us know when you can meet and confer next week.

1.      Bankrate's "Price Prez Reports" reflecting any leads obtained from Inadco as of the 1st and 15th day of each month for the period beginning December 1, 2010 and ending November 30, 2012.

2.      Bankrate's "Warm Transfer Reports" naming or reporting information regarding leads obtained from Inadco. To the extent such reports exist, please provide 2 reports for each month for the time period December 1, 2010 and ending November 30, 2012.

3.      Bankrate's "Client Disposition Reports" naming or reporting information regarding leads obtained from Inadco. To the extent such reports exist, please provide 2 reports for each month for the time period December 1, 2010 and ending November 30, 2012.

4.      Bankrate's reports, logs, and/or records related to the "Agent Credit Rate" for leads obtained from Inadco. To the extent such reports exist, please provide 2 reports for each month for the time period December 1, 2010 and ending November 30, 2012.

5.      Bankrate's reports, logs, and/or records related to the "Conversion Rate" for leads obtained from Inadco for the time period December 1, 2011 and ending November 30, 2012.

6.      All database schema and fields that Bankrate maintains for the leads it purchased from Inadco. Please indicate whether such schema included populated fields for "Subsource ID" or "Referring URL" or similar field.

7.      A report generated by querying Bankrate's database(s) that contains its Inadco lead data for all Inadco leads where the "Subsource ID" or "Referring URL" or similar field is populated with www.branddealsonline.com. Include in the report the number of leads Bankrate purchased from Inadco that originated via www.branddealsonline.com.

8.      A random sample of 50 leads Bankrate purchased from Inadco, including all lead information Bankrate has for those leads (all associated fields and/or database schema).

We look forward to hearing from you.

Best,

-Steven

--

Steven Lezell Woodrow | Edelson LLC
999 West 18th Street
Denver, CO 80202
1.303.357.4878 (direct) | 1.303.357.4877 (firm) | 1.312.589.6378 (fax)
swoodrow@edelson.com | www.edelson.com

Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE
The information contained in this communication is the property of Edelson LLC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify Edelson LLC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

# Exhibit 2



**Megan Lindsey <mlindsey@edelson.com>**

## Speight v Bankrate

**Steve Woodrow** <swoodrow@edelson.com>                                      Fri, Aug 16, 2013 at 5:35 PM
To: "Merryman, Bryan" <bmerryman@whitecase.com>, "Hawk, J. Jonathan" <jhawk@whitecase.com>, Megan Lindsey <mlindsey@edelson.com>, Patrick Peluso <ppeluso@edelson.com>

Bryan:

This confirms our telephone call held this afternoon. I've reached out to SubscriberBASE about doing the deposition on the 29th or 30th and will let you know when I hear back. I've also asked that Inadco call me back. Like I said on the phone, we are prepared to move the Court to compel Inadco to produce the information and provide a deposition witness. We will likely be filing that Motion Monday or Tuesday.

We additionally agreed that we're at issue with respect to the database information for the data in the Five9 dialer (and perhaps Bankrate's other databases needed to show which Inadco leads Bankrate called). As explained, we specifically need to understand whether Bankrate's database(s) would show the leads that Bankrate called using the "Warm Transfer Process" where the lead came from Inadco. You indicated that you didn't understand the relevance. As I explained, such data would show the telephone numbers of all the people who Bankrate called where the lead came from Inadco. We could then cross-reference that list of phone numbers with the list of phone numbers of the leads that SubscriberBASE sold to United Quotes (UQDirect) that were passed on to Inadco. Those phone numbers appearing on both lists would be the persons Bankrate called where the Inadco lead came from Branddeals/SubscirberBASE.

You responded that "that's not how it works" since, as you theorize, branddeal or Inadco leads could've come through other sources. Given your clients's scrubbing policies, as well as the scrubbing practices of all the parties involved, it is a near guarantee that if Bankrate called numbers appearing on SubscriberBASE's list of numbers generated from www.branddealsonline.com, then this was the path they took to arrive at Bankrate.

You then questioned whether the information had been requested in our discovery requests. A brief review shows that such database information easily falls within both document requests 17 and 18 (in addition to others). For your convenience, Doc Req. 17 asked for:

All DOCUMENTS RELATING TO how the PHONE CALLS to PLAINTIFF and the PROPOSED BANKRATE CLASS MEMBERS were made, INCLUDING, DOCUMENTS DESCRIBING or IDENTIFYING all TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS, and how the phone numbers of the PLAINTIFF and the PROPOSED BANKRATE CLASS MEMBERS were inputted, processed, stored, and dialed.

This information plainly concerns how the phone numbers were inputted, processed, stored and dialed (and, to be sure, DOCUMENTS is defined to include ESI, which this database information plainly constitutes). Accordingly, we do not believe that any basis exists for Bankrate to withhold such database information. Given that we are at issue, we will promptly bring this issue to the Court's attention.

At the end of the call, during our discussion of sampling (which, after questioning the relevance, you indicated you would speak with your client about) you asked whether we would dismiss the case if the sampled results were to reveal that personal health information (including info about AIDS/HIV, family cancer history, questions about tobacco use and other information) was transmitted from the Inadco leads that Bankrate

purchased. I indicated we would have to look at the sample results to make that assessment. I then asked whether you would be wiling to admit that Bankrate failed to obtain consent if Bates 186 and 187 weren't actually shown to consumers.

You laughed and dismissively responded that you would not. I asked if you had any other pages where consent was given or any other way your client obtained consent and you couldn't provide any response, other than a vague statement that you have defenses to certification and that we have been looking at the incorrect website. Given that we've asked for almost 3/4ths of a year now for all consent language and websites shown to the Inadco leads (specifically those originated through www.branddealsonline.com), insofar as your response implies that you have additional evidence regarding the appearance of www.branddealsonline.com in August 2012 or other, as yet unproduced and undisclosed consent language that would've applied to such consumers, you must produce it immediately. Any attempt to introduce previously undisclosed evidence will be met with a motion to bar, motion for sanctions, and other appropriate filings.

Ultimately, you were unable to provide any other consent language on the call. Again however, if you have such language or evidence of the operative website as it appeared in August 2012 (as your statement that we are relying on a website from the wrong time period implies you do) produce it immediately. Otherwise, we will proceed based on the representations that you made to the Court that the consent pages at Bates 186 and 187 are what Bankrate is relying on in this case to assert that it received consent to call from all leads originated via www.branddealsonline.com.

Regards,

-Steven


--
Steven Lezell Woodrow | Edelson LLC
999 West 18th Street
Denver, CO 80202
1.303.357.4878 (direct) | 1.303.357.4877 (firm) | 1.312.589.6378 (fax)
swoodrow@edelson.com | www.edelson.com

Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE

The information contained in this communication is the property of Edelson LLC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify Edelson LLC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.