IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-2638-CMA-KMT

STEPHANIE SPEIGHT, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

BANKRATE, INC., a Delaware corporation,

    Defendant.

---

**BANKRATE, INC.'S OPPOSITION TO PLAINTIFF SPEIGHT'S SECOND MOTION TO COMPEL BANKRATE TO ANSWER DISCOVERY**

---

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................................3
II. FACTUAL BACKGROUND ..................................................................................4
    A. The Parties Resolved Plaintiff's Perceived Deficiencies With Bankrate's Response to Document Request No. 17 ................................5
    B. The Court Resolved Issues Relating to Document Request No. 18 ..........6
    C. Plaintiff Informally Requested Documents from Bankrate ........................7
III. THE COURT SHOULD DENY PLAINTIFF'S MOTION ..........................................8
    A. Plaintiff Failed to Make Reasonable Efforts to Resolve This Dispute ...................................................................................................9
    B. Plaintiff Seeks Documents That Are Not Responsive to Document Request Nos. 17 and 18 ...........................................................................11
    C. Bankrate Has Met Its Obligations In Full to Respond to Document Request Nos. 17 and 18 ...........................................................................13
IV. CONCLUSION ....................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cotracom Commodity Trading Co. v. Seaboard Corp.*,
   189 F.R.D. 456 (D. Kan. 1999) ................................................................9, 10

*Hoelzel v. First Select Corp.*,
   214 F.R.D. 634 (D. Colo. 2003) ...................................................................9

*Kirzhner v. Silverstein, et al.*,
   2011 WL 1321750 (D. Colo. Apr. 5, 2011) ............................................10, 14

*Sithon Maritime Co. v. Mansion*,
   1998 WL 182785 (D. Kan. Apr. 10, 1998) ..................................................14

### FEDERAL STATUTES

47 U.S.C. § 227(a)(1) ............................................................................................12

### FEDERAL RULES

Fed. R. Civ. P. 34 .................................................................................................14
D. Colo. L.R. 7.1 .......................................................................................9, 10, 11

LOSANGELES 1027643

## I. INTRODUCTION

Plaintiff Stephanie Speight's ("Plaintiff") motion to compel the production of certain documents disregards Federal Rule of Civil Procedure ("Rule") 34, Civil Local Rule for the District of Colorado ("Local Rule") 7.1A, and her agreements with Bankrate reached during the parties' meet and confer sessions in May and June 2013.

Plaintiff's motion seeks an order compelling Bankrate to produce certain "database schema" and "Inadco lead data." Yet, there is no pending discovery request which entitles Plaintiff to the production of documents. Bankrate met its obligations in full to respond to Plaintiff's first request for production of documents, either by its initial response, agreements made with Plaintiff, or compliance with this Court's order on Plaintiff's first motion to compel.

Now, by this second motion to compel, Plaintiff attempts to obtain more documents in response to document requests long ago resolved. Plaintiff first made her latest request informally on August 6, 2013, in an email to Bankrate. Thereafter, on August 16, 2013, one business day before filing her motion, Plaintiff identified two written discovery requests served on Bankrate that she contended would encompass the materials identified in her August 6 email. Those two document requests -- request nos. 17 and 18 (served on Bankrate on January 21, 2013) -- are the purported basis for seeking these documents. Plaintiff's August 16 email to Bankrate identifying request nos. 17 and 18 simultaneously informed Bankrate that Plaintiff had terminated the meet and confer process, and that she would "promptly" file a motion to compel with the Court, which she did on Monday, August 19, 2013.

Plaintiff did not provide the parties any opportunity to meet and confer regarding Bankrate's written objections to request nos. 17 and 18, which Bankrate served on Plaintiff on February 28, 2013. Had Plaintiff afforded Bankrate that opportunity before

3

terminating the meet and confer process, Bankrate would have explained to Plaintiff that request nos. 17 and 18 do <u>not</u> encompass the materials she seeks. Indeed, in May and June 2013, the parties met and conferred regarding, among other issues, Bankrate's responses to request nos. 17 and 18. During that process, Plaintiff agreed with Bankrate that Bankrate had satisfied request no. 17. In June 2013, Plaintiff narrowed the scope of request no. 18, and Bankrate has since satisfied that request by producing a list of telephone numbers to Plaintiff pursuant to the Court's Order of August 13, 2013, ruling on Plaintiff's first motion to compel.

Put simply, Plaintiff's motion seeks more discovery from Bankrate without serving a proper written discovery request. Plaintiff seeks to overcome this procedural deficiency by turning her written discovery requests served on January 21, 2013, into a moving target, changing the agreed upon scope of those requests after Bankrate had complied fully. Plaintiff's failure to comply with proper procedure and Bankrate's full compliance with the two requests that purportedly serve as the basis for her motion mandate denial of her motion.

For these reasons, as set forth more fully below, Bankrate respectfully requests that the Court deny Plaintiff's second motion to compel.

## II.   FACTUAL BACKGROUND[1]

On January 21, 2013, Plaintiff served Bankrate with her first (and only) set of written discovery requests in this case. Hawk Decl., ¶ 2. Plaintiff's first set of written discovery requests included document request nos. 17 and 18, asking Bankrate to produce:

---

[1] Bankrate's recent filings with the Court set forth pertinent allegations made in Plaintiff's operative complaint, Bankrate's responses thereto, and Bankrate's position on whether Plaintiff can certify her putative class. See Bankrate's Opp. to Plaintiff Speight's Mot. to Extend Deadlines, Dkt. No. 52, at 4-5 (filed Aug. 19, 2013). Bankrate will not repeat those here, except to note that, contrary to the statements in Plaintiff's motion, there have not been any individuals identified who are "like Plaintiff Speight." Mot. at 2-3. Plaintiff Speight purportedly did not request a call to discuss an insurance quote and did not enter her cellular telephone number as her contact number. Bankrate obtains telephone numbers from individuals requesting calls to discuss insurance quotes, and calls those individuals.

4

> **REQUEST FOR PRODUCTION NO. 17:**
> All DOCUMENTS RELATING TO how the PHONE CALLS to PLAINTIFF and the PROPOSED BANKRATE CLASS MEMBERS were made, INCLUDING, DOCUMENTS DESCRIBING or IDENTIFYING all TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS, and how the phone numbers of the PLAINTIFF and the PROPOSED BANKRATE CLASS MEMBERS were inputted, processed, stored, and dialed.
>
> **REQUEST FOR PRODUCTION NO. 18:**
> All DOCUMENTS and ESI that IDENTIFY the total number of PHONE CALLS YOU made, or that were made on YOUR behalf, to the PROPOSED BANKRATE CLASS MEMBERS.

Hawk Decl., ¶ 3, Ex. A.

Bankrate served Plaintiff with written responses to her discovery requests, including document request nos. 17 and 18, on February 28, 2013. Hawk Decl., ¶ 3. Bankrate agreed to produce certain documents in response to request nos. 17 and 18. *Id.* Bankrate produced those documents, as well as other materials, in its initial production of documents to Plaintiff on April 16, 2013. *Id.*, ¶ 4. On May 10, 2013, Plaintiff contacted Bankrate seeking to meet and confer regarding Bankrate's written responses and its initial production of documents. *Id.*, ¶ 5. The parties thereafter spent hours meeting and conferring through approximately June 10, 2013. *Id.*, ¶¶ 5-9.

### A. The Parties Resolved Plaintiff's Perceived Deficiencies With Bankrate's Response to Document Request No. 17

During the parties' meet and confer sessions in May and June 2013, Plaintiff expressed two complaints about Bankrate's response to document request no. 17. Hawk Decl., ¶¶ 5-8. First, Plaintiff purportedly could not discern which documents were potentially responsive to request no. 17 and asked Bankrate to identify such documents by production number. Hawk Decl., ¶ 5. While Plaintiff did not serve any formal discovery request on Bankrate seeking that information, Bankrate voluntarily identified

the responsive documents in its production. *Id.*, ¶ 6. After Bankrate provided Plaintiff with the requested production numbers, Plaintiff told Bankrate that she could not read black and white copies of documents corresponding to the identified production numbers, and asked Bankrate to produce color copies of those same documents. *Id.*, ¶ 8. Bankrate, again, obliged Plaintiff's request and produced color copies on June 14, 2013. *Id.*, ¶ 10. As of June 14, 2013, Bankrate had complied fully with request no. 17.

Plaintiff did not raise any other complaints about Bankrate's production of documents or written response to document request no. 17 until the evening of Friday, August 16, 2013, one business day before filing her second motion to compel. Hawk Decl., ¶ 11; Plaintiff Speight's Mot. to Compel, Dkt. No. 54 (filed Aug. 19, 2013).

### B. The Court Resolved Issues Relating to Document Request No. 18

During the parties' meet and confer sessions in May and June 2013, Plaintiff narrowed the scope of certain discovery requests, including document request no. 18. Hawk Decl., ¶ 9. Specifically, Plaintiff narrowed interrogatory no. 8 and document request nos. 18 and 30 through 33, among others, to encompass only telephone calls that Bankrate made from (877) 484-0185 to individuals whose contact information Bankrate obtained from Inadco, but who subsequently contacted Bankrate to say they no longer wanted to receive such calls. *Id.* Even though Plaintiff narrowed the scope of those requests, Bankrate disagreed with Plaintiff that the narrowed scope was appropriate, and Bankrate declined to serve further responses or produce additional documents, if any, in response to those requests. *Id.*

On June 21, 2013, Plaintiff filed her first motion to compel discovery from Bankrate, seeking an order compelling Bankrate to provide a further response to interrogatory no. 8 and produce documents responsive to document request nos. 30 through 33 as narrowed during the parties' meet and confer sessions. *See* Plaintiff

LOSANGELES 1027643

Speight's First Mot. to Compel, Dkt. No. 37, at 8 (filed June 21, 2013). Plaintiff's first motion to compel did not seek an order compelling Bankrate to produce additional documents or provide a further response to request no. 18. *Id.* Plaintiff did not seek anything further from Bankrate regarding request no. 18 until she sent Bankrate an email on Friday evening, August 16, 2013. Hawk Decl., ¶¶ 11, 17.

On August 13, 2013, the Court ruled on Plaintiff's first motion to compel, holding that Plaintiff's narrowed scope for interrogatory no. 8 and document request nos. 30 through 33 was, in part, appropriate. Order, Dkt. No. 50 (filed Aug. 13, 2013). The Court ordered Bankrate to produce a list of "leads that came from Inadco pertaining to phone calls categorized as 'never requested' or 'do not call.'" *Id.* Bankrate produced that list. Hawk Decl., ¶ 22. Assuming *arguendo* that Plaintiff's document request no. 18 even applies here (discussed below), Bankrate's production of documents pursuant to the Court's order on Plaintiff's document request nos. 30 through 33 satisfied request no. 18, because Plaintiff narrowed all of those requests in the same way during the parties' May and June 2013 meet and confer sessions. *Id.*, ¶ 9.

### C. Plaintiff Informally Requested Documents from Bankrate

On August 6, 2013, Plaintiff sent Bankrate an email requesting that Bankrate produce certain "database schema" and "Inadco lead data."[2] Hawk Decl., ¶ 13. Plaintiff's email did not identify any written discovery requests that would encompass such materials. *Id.* Plaintiff also did not serve Bankrate with a formal request for the production of those materials. *Id.*

On Friday, August 16, 2013, the parties met and conferred regarding Plaintiff's

---

[2] Plaintiff's motion spends a great deal of time purporting to explain the relevance of these materials, particularly in conjunction with "Subsource IDs" and "Referring URLs" that, if they existed in Bankrate records, could possibly identify the website through which a third party generated each lead. Mot. at 2-5. Plaintiff's motion fails to explain, however, that Bankrate informed her that its records do not contain any such information for leads that Bankrate obtained from Inadco. Hawk Decl., ¶ 15.

request for "database schema" and "Inadco lead data." Hawk Decl., ¶¶ 14-16. During that meet and confer session, Bankrate asked Plaintiff to identify the formal written discovery requests requiring production of the requested documents. Hawk Decl., ¶ 14. Plaintiff did not identify any such formal discovery requests during that call. *Id.*

Only later in the evening on Friday, August 16, after the parties' meet and confer session ended, did Plaintiff inform Bankrate via email, for the first time, that Plaintiff believes, document request nos. 17 and 18 that she served on January 21, 2013, encompass her informal requests made on August 6, 2013, for "database schema" and "Inadco lead data." Hawk Decl., ¶ 17. Plaintiff's same August 16 email simultaneously informed Bankrate that she had terminated the parties' meet and confer efforts on these issues, and that Plaintiff would "promptly" file a motion to compel with the Court. *Id.*, ¶ 18. Plaintiff filed that motion the next business day, Monday August 19, 2013. *See* Plaintiff Speight's Second Mot. to Compel, Dkt. No. 54 (filed Aug. 19, 2013).

The parties <u>never</u> discussed Bankrate's objections to request nos. 17 and 18 in connection with Plaintiff's requests for "database schema" and "Inadco lead data," and the parties <u>never</u> discussed how their May and June 2013 meet and confer efforts regarding request nos. 17 and 18 bear on Plaintiff's August 6 email requests. Hawk Decl., ¶ 20. Plaintiff <u>never</u> even told Bankrate that she would rely on those requests until Friday evening, August 16, 2013, in conjunction with Plaintiff's notice to Bankrate that she had ended the parties' meet and confer efforts. *Id.*, ¶ 17.

### III. THE COURT SHOULD DENY PLAINTIFF'S MOTION

Bankrate complied fully with its obligations to respond to document request nos. 17 and 18, upon which Plaintiff bases her motion. For these reasons, as set forth more fully below, the Court should deny Plaintiff's motion.

8

## A. Plaintiff Failed to Make Reasonable Efforts to Resolve This Dispute

Local Rule 7.1 requires that a party moving to compel discovery "confer[] or ma[k]e reasonable, good-faith efforts to confer with opposing counsel . . . to resolve the disputed matter" before involving the court. D. Colo. L.R. 7.1A. Indeed, a movant must first, before filing her motion, make reasonable efforts to "hold a conference . . . compare views and attempt to reach an agreement, including by compromise if appropriate." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Colo. 2003) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459-60 (D. Kan. 1999) (in applying meet and confer rule akin to Local Rule 7.1A, holding counsel must "converse, confer, compare views, consult and deliberate"). A movant does not satisfy Local Rule 7.1A's good faith meet and confer requirement if she simply demands the opposing party comply with a discovery request, and then files a motion to compel when her demand is not met. *Id.*, at 636. *Seaboard* illustrates these requirements.

In *Seaboard*, the defendant served written discovery requests for the production of documents on the plaintiff, and the plaintiff served written objections in response thereto. *Seaboard Corp.*, 189 F.R.D. at 458. Over a three-week period following the plaintiff's service of its written objections, the defendant made four telephone calls and sent two letters to the plaintiff, seeking the production of potentially responsive documents. *Id.* The defendant did not receive the documents he sought through those efforts, and filed a motion to compel. *Id.* at 459.

In assessing whether the movant complied with that district court's equivalent of Local Rule 7.1A, the *Seaboard* court looked beyond the quantity of communications between the parties, and assessed the "quality" of the defendant's efforts. *Id.* The *Seaboard* court found that all of the defendant's communications "essentially directed plaintiff to produce responsive documents notwithstanding [plaintiff's] asserted

9

objections." *Id.* The defendant did not attempt to compromise and, moreover, "unilaterally set a deadline" for the plaintiff to comply with demands that was "premature" because the parties "never really discussed the crux of the dispute." *Id.* ("[w]hen a dispute involves objections to requested discovery, parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery"). The *Seaboard* court found the defendant's efforts to meet and confer were inadequate, and denied its motion to compel as a result. *Id.* The same outcome is appropriate here, where Plaintiff's meet and confer efforts were even more paltry.

From the time Plaintiff requested Bankrate produce "database schema" and "Inadco lead data" on August 6, 2013, through the parties' telephonic meet and confer session on August 16, 2013, Plaintiff, despite being asked, failed to identify for Bankrate any written discovery requests to which such materials may be responsive. Hawk Decl., ¶¶ 14-18. Plaintiff first informed Bankrate of her position, that request nos. 17 and 18 require production of the requested materials, on Friday evening, August 16, 2013, in an email -- <u>after</u> the parties' meet and confer efforts had ended. *Id.*, ¶ 18.

Plaintiff's August 16 email was meaningless for purposes of satisfying Local Rule 7.1A. In addition to identifying request nos. 17 and 18 as the basis for Plaintiff's August 6 requests, Plaintiff's August 16 email simultaneously notified Bankrate that Plaintiff would "promptly" file her second motion to compel. Hawk Decl., ¶ 18. The meet and confer process ended because Plaintiff had decided to involve the Court before Plaintiff told Bankrate the formal basis for her previously informal discovery requests.

Plaintiff led Bankrate through the meet and confer process without disclosing any proper basis for her requests. *Id.*, ¶¶ 14-19; *see generally Kirzhner v. Silverstein, et al.*, 2011 WL 1321750, at * 4 (D. Colo. Apr. 5, 2011) ("I will not compel the production of documents not sought through the formal discovery procedures"), *rev. on other grounds.*

After Bankrate refused to comply with Plaintiff's demand, Plaintiff hastily identified two (inapplicable) document requests that she served on Bankrate eight months ago, notified Bankrate she would move to compel the production of documents based on those two requests, and filed her motion the following business day. *Id.*

By failing to disclose the basis for her requests until <u>after</u> the meet and confer process had ended, Plaintiff <u>never</u> provided an opportunity to discuss Bankrate's written objections to request nos. 17 and 18. Plaintiff also <u>never</u> provided an opportunity to discuss Bankrate's position (more fully set forth below) that all of Plaintiff's perceived issues with Bankrate's responses to request nos. 17 and 18 have been resolved.[3] The Court should find that Plaintiff failed to satisfy Local Rule 7.1A's good faith meet and confer requirement, and should deny her motion as a result.

### B. Plaintiff Seeks Documents That Are Not Responsive to Document Request Nos. 17 and 18

Plaintiff's motion argues incorrectly that document request nos. 17 and 18 support an order compelling Bankrate to produce "database schema" and "Inadco lead data," including a list of all Inadco leads contacted by Bankrate from July 5, 2012, through October 15, 2012. Mot. at 4-5. Document request nos. 17 and 18 do not apply.

Request no. 17, by its very terms, seeks only documents showing "how" the dialing equipment Bankrate Insurance uses to make calls from (877) 484-0185 functions, and showing "how" Bankrate Insurance inputs telephone numbers into that dialing equipment. *See* Hawk Decl., ¶ 3, Ex. A. Request no. 17 plainly seeks

---

[3] Just as troubling, Plaintiff's counsel spent much of the parties' telephone call on August 16, 2013, becoming angry, raising his voice and talking over Bankrate's counsel, preventing Bankrate's counsel from addressing issues raised during the call. Hawk Decl., ¶ 16. Plaintiff's counsel even acknowledged during the call that such a characterization of his ongoing conduct in this action was "fair," before he resumed yelling into the phone for the duration of the call. *Id.* Plaintiff's motion mischaracterizes much of the parties' meet and confer session on August 16, 2013. *Id.*, ¶¶ 16, 21, Ex. B.

11

information regarding whether Bankrate uses an "automatic telephone dialing system"[4] as defined under the TCPA. 47 U.S.C. § 227(a)(1). Indeed, Bankrate produced documents in response to request no. 17 on April 16, 2013, and June 14, 2013, showing only <u>how</u> the dialer works (such as a list of computer equipment attached to the dialer). Hawk Decl., ¶¶ 3-4. Plaintiff accepted those documents and did not complain except to ask which documents Bankrate produced showed the dialer's functionalities and for color copies of those documents. Hawk Decl., ¶¶ 5-8. Plaintiff's actions conclusively evidence her intent that request no. 17 applies only to the functionalities of the dialer and nothing else.

Plaintiff's August 6 requests, by contrast, seek a list from Bankrate showing the telephone numbers of Inadco leads that Bankrate Insurance dialed from July 5, 2012, through October 15, 2012, and personal information submitted by consumers with those leads.[5] Request no. 17, by its express terms, does <u>not</u> encompass documents showing

---

[4] An auto-dialer "means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 227(a)(1).

[5] Plaintiff believes that this information will help her determine which leads that Bankrate called originated through the website URLs www.branddealonline.com and www.branddealsonline.com. Mot. at 5. Plaintiff's motion states that the cellular telephone numbers appearing on both a list of numbers of Inadco leads that Bankrate called and a list of leads generated through the two website URLs above "are nearly certain to be members of the class." *Id.* Plaintiff is incorrect, and ignores other issues that determine membership in a class, if one even exists. For example, assuming *arguendo* that Plaintiff can certify a class (which she cannot), membership will be determined by, among other factors, whether disclosure language regarding prior express consent viewed by consumers on those websites was the same during Plaintiff's entire proposed class period. Even more specifically, membership will be determined by whether prior express consent language displayed to consumers as they navigated the websites was the same for both consumers shopping for life insurance and consumers shopping for health insurance. It is not as simple as identifying telephone numbers that appear on two separate lists.

Plaintiff's motion also requests, for the first time, that Bankrate produce "all data regarding the date the data entries [*i.e.*, leads] were created." Mot. at 6, fn. 4. Plaintiff purports to seek that information so she can automatically exclude from her putative class "leads called by Bankrate . . . too far following the origination date." *Id.* Indeed, a lead is less likely to have been originated via the www.branddealonline.com and www.branddealsonline.com websites if Bankrate called the lead more than a day or two after the date the lead was generated. A SubscriberBASE employee has already

12

"what" telephone numbers Bankrate dialed or the lead information attached to those numbers.

Request no. 18, likewise, seeks only documents showing the "total number of TELEPHONE CALLS [Bankrate Insurance] MADE . . . to the PROPOSED BANKRATE CLASS MEMBERS." See Hawk Decl., ¶ 3, Ex. A. Plaintiff's August 6 requests, asking for a list of telephone numbers and consumers' personal information associated with those leads, go well beyond that scope.

Put simply, request nos. 17 and 18 have clearly defined scopes, and those scopes do not encompass the documents that Plaintiff seeks via her August 6 requests. In her effort to obtain those documents now -- documents which Plaintiff never requested through the formal discovery process -- Plaintiff relies on tortured readings of request nos. 17 and 18. Those requests do not apply here, and Plaintiff's motion should be denied.

### C. Bankrate Has Met Its Obligations In Full to Respond to Document Request Nos. 17 and 18

In any event, Bankrate has met its obligations in full to respond to Plaintiff's document request nos. 17 and 18.

In May and June 2013, Plaintiff raised perceived concerns with Bankrate's written response to request no. 17, and with Bankrate's production of documents potentially responsive thereto. Hawk Decl., ¶¶ 5-11. Plaintiff agreed that the parties resolved those perceived issues months ago, and Plaintiff did not pursue any further discovery under request no. 17 (at least not until August 16, 2013). *Id.* Indeed, the parties' agreement that Bankrate satisfied request no. 17 during the meet and confer process in May and June 2013 is reflected in the fact that Plaintiff did not include that discovery

---

testified in this action that it transmitted leads generated through the two foregoing website URLs in almost real-time to a lead buyer.

request in her first motion to compel, filed on June 21, 2013. See Plaintiff Speight's First Mot. to Compel, Dkt. No. 37 (filed June 21, 2013).

Plaintiff also, in May and June 2013, narrowed request no. 18 to encompass only telephone calls that Bankrate made from (877) 484-0185 to individuals whose contact information Bankrate obtained from Inadco, but who subsequently contacted Bankrate to say they no longer wanted to receive such calls. Hawk Decl., ¶ 9. On August 13, 2013, the Court ordered Bankrate to produce a list of certain numbers and Bankrate complied. Id., ¶ 22. Bankrate's production of that list satisfied not only request nos. 30 through 33, but also request no. 18, which Plaintiff narrowed in the same way as request nos. 30 through 33 during the parties' meet and confer efforts in May and June 2013. See Id., ¶ 9.

Plaintiff's request here for an order compelling Bankrate to produce additional documents in response to requests nos. 17 and 18 disregards the parties' agreements in an effort to avoid serving proper written discovery requests on Bankrate and to avoid complying with the Federal Rules of Civil Procedure. Plaintiff sought initially to treat her email of August 6, 2013, to Bankrate as an informal request, asking Bankrate to produce "database schema" and "Inadco lead data." Yet, an email should <u>not</u>, and <u>cannot</u>, supplant service on a party of a formal written discovery request. See Kirzhner, 2011 WL 1321750, at * 4 (denying motion to compel the production of certain documents pursuant to the parties' informal agreement to produce those materials); Sithon Maritime Co. v. Mansion, 1998 WL 182785, at *1-2 (D. Kan. Apr. 10, 1998) ("[t]o treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery;" holding "Plaintiff cannot properly move

14

to compel production of documents sought in an informal letter requesting production").[6]

When Bankrate declined to comply with Plaintiff's informal August 6 email request, Plaintiff manufactured a dispute over Bankrate's responses to request nos. 17 and 18, ignoring that Bankrate had complied fully with those requests.

Plaintiff's motion seeks to turn request nos. 17 and 18 into a moving target, and seeks to change the scope of request nos. 17 and 18 despite the parties' May and June 2013 agreements that narrowed those requests so as not to encompass "database schema" or "Inadco data leads." Hawk Decl., ¶¶ 5-11. If Plaintiff wants the materials she now seeks, she should follow the Federal Rules of Civil Procedure, and serve formal written requests. Plaintiff has not done so, and the Court should deny her motion.

## IV. CONCLUSION

For the foregoing reasons, Bankrate respectfully requests that the Court deny Plaintiff's second motion to compel discovery.

Respectfully submitted,

WHITE & CASE LLP

By: _/s/ Bryan A. Merryman_
Bryan A. Merryman
Attorneys for Defendant
Bankrate, Inc.

---

[6] This is the second time that Plaintiff has sought to disregard agreements reached during the parties' meet and confer process in June 2013. See Bankrate's Opp. to Plaintiff Speight's First Motion to Compel, Dkt. No. 41, at 4, 13 (filed July 15, 2013). In Plaintiff's first motion to compel in June 2013, Plaintiff initially asked the Court to find that Bankrate waived the attorney-client privilege and attorney work product protection because Bankrate did not serve a privilege log with its document production on April 16, 2013. Id. Yet, during the meet and confer process in June 2013, Plaintiff and Bankrate agreed that Bankrate would serve a privilege log, within certain parameters. Id. Plaintiff never addressed her first motion to compel's complete disregard for that agreement when Bankrate raised that fact in its opposition to that motion. Now in similar fashion, Plaintiff seeks to enlarge the scope of a written discovery request that she narrowed by agreement during the meet and confer process back in June 2013. Hawk Decl., ¶¶ 5-11.

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Steven L. Woodrow
swoodrow@edelson.com
Megan L. Lindsey
mlindsey@edelson.com
Edelson LLC
999 W. 18th St. #3000
Denver, CO  80202

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin J. Richman
brichman@edelson.com
Christopher Dore
cdore@edelson.com
Edelson LLC
350 North LaSalle, 13th Floor
Chicago, IL  60654

Stefan Coleman
law@stefancoleman.com
1072 Madison Ave. #1
Lakewood, NJ  08701

/s/J. Jonathan Hawk

LOSANGELES 1027643